IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHERMAN HENDERSON | ) | |
| | ) | |
| v. | ) | Case No. 3:04-0043 |
| | ) | Judge Campell/Brown |
| PHIL BREDESEN, et al. | ) | |

REPORT AND RECOMMENDATION

I. INTRODUCTION

Currently pending in this civil action are motions for summary judgement filed by both plaintiff (Docket Entry No. 106) and defendants (Docket Entry No. 125). In essence, plaintiff claims that he was denied parole unconstitutionally due to a racially discriminatory motive on behalf of the parole board. A denial based upon such improper criteria would be in violation of his right to equal protection. He offers examples of other inmates with "worse" criminal records in support of this claim. The state has responded with statistical evidence demonstrating an even-handed treatment of prisoners in the parole process, regardless of race. Upon review of the governing law and the record as a whole, the undersigned concludes that under the facts established in the moving papers, no reasonable jury considering this action could return a verdict for Plaintiff Henderson. Accordingly, for the reasons given below, it is recommended

-1-

that plaintiff's motion for summary judgement be DENIED, and that defendant's motion for summary judgement be GRANTED.

## II. FACTS

Sherman Henderson ("Plaintiff") is a prisoner of the State of Tennessee incarcerated at the Northwest Correctional Center in Tiptonville, TN. Sheila Swearingen, Bill Dalton, Lynn Duncan, and Ray Maples ("Defendants") were members of the Tennessee Board of Probation and Parole. The Plaintiff alleges that he was denied parole on December 12, 2001, and December 18, 2003 because of unlawful discrimination on the basis of his race. Plaintiff alleges that his parole denial was a violation of his equal protection rights because "similarly situated" white inmates have been granted parole. As evidence for these claims Plaintiff has raised examples of white prisoners convicted of murder who have been granted parole like Billy Joe Linticum; Jeffery Cheairs; Robert Gibson; and Arnold Carter. (Plaintiff's Memorandum of Law, Docket Entry No. 114). The State has responded to these allegations by presenting statistical evidence of racial breakdown of parole grant hearings from 1996 to 2003. (Affidavit of C. Edward Scudder, Docket Entry No. 130). The defendants have also provided the voting record of the defendants on each of the differently treated prisoners mentioned in the plaintiff's complaint. (Affidavit of C. Edward Scudder, Docket Entry No. 130). Further, the State has offered evidence of other objective considerations used in the Plaintiff's parole grant decision; factors arising out of the offense like the use of a firearm, multiple gunshot wounds, and additional factors including a letter from the Attorney General opposing the Plaintiff's release. (Affidavit of C. Edward Scudder, Docket Entry No. 130) The Court has previously dismissed all of plaintiff

Martha Henderson's claims arising out of these allegations. (Order, Docket Entry No. 89). Plaintiff Henderson's claims have been dismissed except for his equal protection claim stemming from his second parole hearing on December 18, 2003.

III. CONCLUSIONS OF LAW

A. SUMMARY JUDGEMENT STANDARD

Summary Judgment is appropriate only where "There is no genuine issue as to any material fact and... the moving party is entitled to summary judgement as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Newman v. Federal Express Corp.,* 266 F.3d 401, 404-05 (6th Cir. 2001). A material fact is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the plaintiff. *Id.* at 249-250. The underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec Indus. Co. v. Zenith Radio Corp., Ltd.,* 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001), *cert denied,* 534 U.S. 896 (2001).

## B. EQUAL PROTECTION CLAIM[1]

The record and applicable law demonstrate that no reasonable jury would find that plaintiff was denied equal protection. The federal Equal Protection Clause provides that, "No State shall make or enforce any law which shall... deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend XIV, § 1. The equal protection provisions of the federal and state constitutions demand that persons similarly situated be treated alike. *See Tenn. Small Sch. Sys. v. McWherter,* 851 S.W.2d 139, 153 (Tenn.1993); *City of Cleburn v. Cleburn Living Center*, 473 U.S. 432 (1985). Consequently, in order to establish an equal protection claim the plaintiff must show that similarly situated inmates received different, more favorable treatment than he, and that the difference in treatment was due to purposeful discrimination against him.

### I. Similarly Situated

In order for the Plaintiff to be considered similarly situated to the prisoners treated differently for purposes of an equal protection analysis, he must show similarity in all relevant aspects of the parole decision. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344-352 (6th Cir. 1998) (Holding that employees must be similar in all relevant respects to be similarly situated). The plaintiff has failed to do so. The plaintiff supplied examples of paroled

---

[1]This court has previously dismissed all of plaintiff's claims except for his Equal Protection Claim against defendants Maples, Dalton, Duncan, and Swearingen. (Order, Docket Entry No. 89). Therefore, the court will discount the parties discussion of a due process claim as irrelevant and confine its analysis to the equal protection argument.

-4-

prisoners that had similar sentences to his and sometimes worse behavioral records and risk assessment scores. (Memorandum, Docket Entry No. 114, p. 19) However, the parole board has authority to consider many sources in making its determination of eligibility:

> Pursuant to Rule 1100-1-1-.06, of the Rules of the Board of Probation and Parole the board may apply certain factors to each eligible inmate to assist it in determining whether such inmate will live and remain at liberty without violating the law or the conditions of his/her parole.
> Those factors include in part (a) the nature of the crime and its severity, (d) the views of the appropriate trial judge and the district attorney general who prosecuted the case, (f) any mitigating or aggravating circumstances surrounding the offense. (Affidavit of Edward Scudder, Docket Entry No. 130)

As reflected in the above-quoted language, the parole process involves consideration of a variety of factors by the parole board in its discretion. This process has been described as "depend[ing] on a amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7 (1979). The state has provided several examples of variables considered by the parole board in reviewing Mr. Henderson's file: a letter from the District Attorney opposing his release, the cruelty of his offense, and the use of a deadly weapon in the commission of the crime. (Affidavit of Edward Scudder, Docket Entry No. 130) In light of the many factors affecting individual parole decisions, the Plaintiff has not demonstrated that those prisoners who received differing treatment were similarly situated in all relevant respects.

## II. Discriminatory Purpose

The Plaintiff's claim also fails to show that a discriminatory purpose underlay the parole board's denial of his parole release. In *Nedea,* the court established the difficulty of challenging the discretion of a parole board, "to succeed on a claim challenging a parole release decision and the broad discretion afforded the Parole Authority for purposes of establishing a violation of equal protection, a complaining party must show "exceptionally clear proof" that the board abused its discretion. *Nedea v. Voinovich*, 994 F. Supp,. 910, 917 (N. D. Ohio 1998) *citing McCleskey v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, (1987). Specifically, the prisoner must show "purposeful discrimination" and then establish that the discrimination had a discriminatory effect on him. *Id.* at 917. Accordingly, an equal protection plaintiff cannot prevail if the defendants have legitimate, nondiscriminatory reasons for their actions. *Id.*

The plaintiff's evidence purporting to establish a discriminatory purpose is anecdotal and is not borne out by the statistical record. (Affidavit of Edward Scudder, Docket Entry No. 130). Examples of disparate treatment of a handful of white prisoners does not establish a racially discriminatory purpose in the denial of parole for the plaintiff. The plaintiff's discrimination argument is especially undermined due to his insistence that other black prisoners with worse criminal records improperly received parole before he did. (Plaintiff's Memorandum of Law, Docket Entry 114 p. 8). A brief examination of the voting records for the offenders mentioned in the Plaintiff's motion demonstrates the insufficiency of the plaintiff's evidence. Of the twenty-two offenders mentioned in the motion, six were not voted on by any of the defendants, and a further five received only votes to decline parole. (Affidavit of Edward Scudder, Docket Entry No. 130). Thus, plaintiff has failed to establish any triable issue with respect to his equal protection claim.

-6-

## IV. RECOMMENDATION

The plaintiff's complaint does not support his conclusory allegation that his denial of parole was unlawful.  Plaintiff is not entitled to a trial purely on the basis of allegations, and he has not placed before the court any probative evidence demonstrating a racially discriminatory motive for his parole denial.  In light of the foregoing, the Magistrate Judge recommends that the plaintiff's motion for summary judgment be denied and that the state's motion for summary judgment be GRANTED.  Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *Thomas v. Arn*, 474 U.S. 140 (1985) ; *Cowherd v. Million*, 380 F.3d 309, 912 (6th Cir. 2004) (en banc).

ENTERED this 8th day of August, 2005..

/s/ Joe B. Brown
JOE B. BROWN
UNITED STATES MAGISTRATE JUDGE